## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NOEL DAVILA, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:13-cv-81 (SRU) |
| | : | |
| MESSIER, et al., | : | |
| Defendants. | : | |

## RULING AND ORDER ON
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff, Noel Davila, is confined at the Corrigan-Radgowski Correctional Center in

Uncasville, Connecticut.  He asserts federal claims involving an invasive search, interference

with his legal mail and materials, and retaliation.  Davila also asserts several state torts claims,

including battery, invasion of privacy, negligent infliction of emotional distress, and intentional

infliction of emotional distress.  He has sued defendants Officer Messier, Reverend Mack H.

Elder, Unit Manager Steve Pluszynski, Grievance Coordinator Ilvento and Warden Scott Erfe in

their individual capacities, and Father Anthony J. Bruno, Deputy Warden G. Mudano, Deputy

Warden Bates, Commissioner Leo C. Arnone, Deputy Commissioner James E. Dzurenda,

District Administrator Angel Quiros and the Connecticut Department of Correction in their

official capacities.  The defendants have filed a motion for summary judgment.  For the reasons

that follow, the motion for summary judgment is GRANTED IN PART and DENIED IN PART.

### I.      Standard of Review

A motion for summary judgment may be granted only where there are no issues of

material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a); *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009).  The moving party may satisfy his burden "by showing—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted).  Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  He must present evidence sufficient to permit a jury to find in his favor in order to defeat the motion for summary judgment.  *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  Merely verifying the allegations of the complaint in an affidavit, however, is insufficient to oppose a motion for summary judgment.  *Zigmund v. Foster*, 106 F. Supp. 2d 352, 356 (D. Conn. 2000) (citing cases).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought.  *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 274 (2d Cir. 2009).  If there is evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party on a material issue, summary judgment is inappropriate.  *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).  However, the existence of a mere "scintilla" of evidence supporting the nonmoving party's position is insufficient to defeat a properly supported motion for summary judgment.  *Harvey v. Homebound Mortg., Inc.*, 547 F.3d 158, 163 (2d Cir. 2008).

## II.     Facts[1]

On June 20, 2012, Davila submitted an Inmate Request Form to defendant Erfe complaining that his legal mail was opened outside of his presence.  Davila did not properly address his outgoing correspondence.  As a result, staff could not clearly identify it as privileged and treated the letter as general correspondence.  The Department of Correction investigated Davila's complaint that documents were removed from the envelope.  Without opening the envelope to ascertain the contends, correctional staff could not verify what was in the envelope or determine whether any documents had been removed.

On July 11, 2012, an inspection of Davila's smudging materials showed a thirty-day supply of smudging material.  On July 17, 2012, defendant Elder inspected Davila's smudging materials.  All of the tobacco supplies in the box had been used.  Between July 11 and July 17, 2012, Davila had used his smudging materials on three occasions.  Defendant Elder suspected

---

[1]The facts are taken from the defendants' Local Rule 56(a)1 Statement.  Local Rule 56(a)2 requires the party opposing summary judgment to submit a statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party.  Each admission or denial must include a citation to an affidavit or other admissible evidence.  In addition, the opposing party must submit a list of disputed factual issues.  D. Conn. L. R. Civ. Pro. 56(a)2 & 56(a)3.

Davila has submitted a document entitled "Plaintiff's Reply to Defendants' Local Rule 56(a)(1) Statement of Material Facts in Opposition of Summary Judgment - Plaintiff's Statement of Disputed Factual Issues."  He has not included the required admission or denial of the defendants' material facts. In his statement of disputed factual issues, Davila only generally refers to his complaint and the attached exhibits.  He does not reference any exhibit by title or page number and refers to no specific page or paragraph of the complaint.  The complaint with exhibits consists of 232 pages.  The court is not required to search through that voluminous document to locate evidence supporting the plaintiff's claims.  Davila is required to support each fact with a specific citation, including specific paragraphs in an affidavit and specific pages in a document of more than one page.  Failure to provide specific citations by counsel or unrepresented parties may result in the court deeming admitted facts that are supported by such evidence.  D. Conn. L. R. Civ. Pro. 56(a)3.

misuse of the smudging supplies and conveyed his concerns to defendants Bruno and Pluszynski.

On July 17, 2012, Davila's cell was searched.  Davila previously had been suspected of assisting with transporting contraband within the prison facility.  Also on July 17, 2012, defendant Pluszynski authorized a strip search of Davila.  Defendant Messier conducted the strip search.  Following the search, Davila was assessed by medical and mental health staff.  Captain Judd conducted an investigation into Davila's allegations of physical contact by defendant Messier during the strip search and found no evidence to support Davila's allegations.

## III.   Discussion

In his complaint, Davila includes the following legal claims: (1) First Amendment rights, (2) procedural due process, (3) violation of the Prison Rape Elimination Act, (4) Fourth Amendment, (5) equal protection, (6) Eighth Amendment, (7) Ninth Amendment, (8) state tort law, and (9) Supremacy Clause.  Compl. 50–51 (doc. #1-1).  In the Initial Review Order (doc. 4), the court dismissed any claim for violation of the Prison Rape Elimination Act.

The defendants move for summary judgment on the grounds that Davila was not subjected to an invasive search, he has not demonstrated an actual injury as a result of the interference with his legal mail and legal documents, and his retaliation claims are conclusory.  In addition, the defendants argue that they are protected by qualified immunity.   The defendants do not address Davila's other legal claims.

### A.    Sovereign Immunity

#### 1.    *Federal Claims*

Davila brings claims against defendants Bruno, Mudano, Bates, Arnone, Dzurenda,

4

Quiros, and the Connecticut Department of Correction in their official capacities.  He seeks

money damages, declaratory judgment, and injunctive relief broadly related to the training of

corrections officers, oversight protocols, and adherence to the policies established by the

Connecticut Department of Correction and Prison Rape Elimination Act, 42 U.S.C. §§ 15601, *et*

*seq.*, with respect to cavity searches.

"A suit generally may not be maintained directly against the State itself, or against an

agency or department of the State, unless the State has waived its sovereign immunity."  *Fla.*

*Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 684 (1982); *see also Miller v. Egan*, 265

Conn. 301, 311 (citing *Howlett v. Rose*, 496 U.S. 356, 365 (1990)).  A plaintiff may not bring

suit under Section 1983 for monetary damages; only suits for injunctive relief may be brought

against a State.  *Quern v. Jordan*, 440 U.S. 332, 338 (1979).  State officials acting in their official

capacities may only be sued for injunctive or declaratory relief, unless the unconstitutional or

wrongful conduct is fairly attributable to the officer in his individual capacity and damages will

not be paid from the state treasury.  *Alden v. Maine*, 527 U.S. 706, 757 (1999).

Connecticut has not waived its sovereign immunity with respect to claims for money

damages brought under Section 1983, and Davila has not pleaded that the alleged

unconstitutional and wrongful conduct is fairly attributable to the aforementioned state officials

in their official capacities.  Accordingly, Davila may only obtain declaratory or injunctive relief

should he prevail on his federal claim for violation of the Fourth Amendment, as discussed below

in section III.B.

      2.    *State Claims*

Davila has also sued the official-capacity defendants for several Connecticut torts under a

theory of *respondeat superior* and failure to train.  Connecticut common law provides that "the state cannot be sued without its consent."  *Miller*, 265 Conn. at 313 (citing *Horton v. Meskill*, 172 Conn. 615, 623 (1977)).  "A suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state."  *Id.* (*citing Fetterman v. Univ. of Conn.*, 192 Conn. 539, 550–51 (1984)).  Exceptions to the common law doctrine are narrowly construed under the jurisprudence of the Connecticut Supreme Court, *Chief Info. Officer v. Computers Plus Ctr.*, 310 Conn. 60, 79–80 (2013), and the meaning of a statute of derogation is "given the effect which makes the least . . . change in sovereign immunity."  *Martinez v. Conn. Dep't of Safety*, 263 Conn. 74, 82 (2003), *superseded by statute on other grounds*, Conn. Gen. Stat. § 53-39a, *as recognized in Vejseli v. Pasha*, 282 Conn. 561, 570 n.8 (2007).  A plaintiff may only circumvent the doctrine by demonstrating that the state legislature statutorily waived the state's sovereign immunity, "either expressly or by force of a necessary implication."  *184 Windsor Avenue, LLC v. Conn.*, 274 Conn. 302, 309 (2005).  The "state's sovereign right not to be sued without its consent is not to be diminished by statute, unless a clear intention to that effect on the part of the legislature is disclosed."  *Martinez*, 263 Conn. at 82.

A plaintiff bringing a claim for money damages against the State must first file his claim with the Connecticut Office of the Claims Commissioner.  Connecticut law provides, "In the absence of a statutory waiver of sovereign immunity, the plaintiff may not bring an action against the state for monetary damages without authorization from the claims commissioner to do so."  *Columbia Air Servs., Inc. v. Conn. Dep't of Transp.*, 293 Conn. 342, 351 (2009) (citing Conn. Gen. Stat. § 4-160); *see also Kroszer v. City of New Haven*, 212 Conn. 415, 423 (1989), *cert. denied*, 493 U.S. 1036 (1990).  Only claims related to payment of disability, pension, retirement

6

or other employment benefits; claims upon which suit is otherwise authorized by law; claims

requiring an administrative hearing; requests by political subdivisions regarding payments in lieu

of taxes; and claims for the refund of taxes are exempted from this regime.  Conn. Gen. Stat. § 4-

142.  That legislation "expressly bars suits [for] . . . monetary claims . . . not sanctioned by the

[claims] commissioner or other statutory provisions."  *Miller*, 265 Conn. at 317–18.

Davila did not file a claim with the Office of the Claims Commissioner and has not

received permission from the Commissioner to sue the official-capacity defendants.  As a result,

his state torts claims against the State are barred by sovereign immunity.  Accordingly, those

claims are dismissed for lack of subject matter jurisdiction.

B.    Searches

1.    *Cell Search*

"[C]orrectional officials must be permitted to devise reasonable search policies to detect

and deter the possession of contraband in their facilities."  *Florence v. Bd. of Chosen*

*Freeholders*, No. 10-945, 132 S. Ct. 1510, 1517 (2012).  Those policies advance institutional

security and preserve institutional order and discipline.  *See Bell v. Wolfish*, 441 U.S. 520, 546

(1979).  Prison officials possess the professional expertise and experience to undertake "[t]he

task of determining whether a policy is reasonably related to legitimate security interests."  *Id.*

(citation omitted).  "'[I]n the absence of substantial evidence in the record to indicate that the

[prison] officials have exaggerated their response to [legitimate security] considerations courts

should ordinarily defer to their expert judgment in such matters.'"  *Id.* (quoting *Block v.*

*Rutherford*, 468 U.S. 576, 584–85 (1984)).

In this case, Davila concedes that defendant Pluszynski ordered the search of his cell after

receiving information that Davila was suspected of misuse of smudging materials.  Possession of those materials other than during religious ceremonies is prohibited.  Although Davila questions the accuracy of the information, the fact that the charge was made is sufficient to warrant a search of Davila's cell.  The defendants' motion for summary judgment is granted with respect to any claims regarding the search of Davila's cell.

2.     <em>Strip Search</em>

Davila challenges the strip search under the Eighth Amendment as sexual abuse.  The Second Circuit has held that "sexual abuse of a prisoner by a correctional officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment."  *Boddie v. Schnieder*, 105 F.3d 857, 860–61 (2d Cir. 1997).  To prevail on an Eighth Amendment claim based on conditions of confinement, an inmate must meet both an objective and subjective prong.  Objectively, the plaintiff must establish that he suffered a sufficiently serious deprivation of his basic human needs—e.g., food, clothing, shelter, medical care and reasonable safety.  *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (internal quotation marks and citation omitted).  The deprivations must be examined in light of contemporary standards of decency to determine whether they are sufficiently serious.  *Id.* at 35–36; *Rhodes v. Chapman*, 425 U.S. 337, 347 (1981).

Subjectively, the plaintiff must show that  the defendants acted with "more than mere negligence."  *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  The plaintiff must demonstrate that the defendant prison officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action.  *See id.* at 834, 837.

The Second Circuit has recognized that, objectively, "[s]exual abuse may violate

8

contemporary standards of decency and can cause severe physical and psychological harm" and "has no legitimate penological purpose." *Boddie*, 105 F.3d at 861 (citing cases).  Furthermore, "[w]here no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." *Id.*  In *Boddie*, however, the Second Circuit affirmed the district court's dismissal of the plaintiff's claim for sexual harassment because it found that the "small number of incidents in which [the plaintiff] was verbally harassed, touched, and pressed against without his consent" were not sufficient to constitute a constitutional violation under the Eighth Amendment.  *Id.*

Davila alleges that the strip search occurred only once and that defendant Messier used his hands to spread Davila's buttocks one time.  *See* Compl. 20 (doc. #1).  That brief instance of alleged sexual touching was not severe enough to constitute a serious deprivation of the plaintiff's basic human needs.  *See Boddie*, 105 F.3d at 861 (although "isolated episodes of harassment and touching alleged by [plaintiff] are despicable and, if true . . . may potentially be the basis of state tort actions. . . . they do not involve a harm of federal constitutional proportions"); *Harry v. Suarez*, No. 10-cv-6756 (NRB), 2012 WL 2053533, at *3 (S.D.N.Y. June 4, 2012) (allegation that prison officer "groped [inmate's] genitals, buttocks, and inner thighs for up to fifty three seconds in the course of a frisk" failed to state Eighth Amendment claim); *Morrison v. Cortright*, 397 F. Supp. 2d 424, 425 (W.D.N.Y. 2005) (allegation that correctional officer shone light up inmate's anus, ran his finger between inmate's buttocks causing inmate to urinate on himself, and rubbed his penis against inmate's buttocks during strip frisk insufficient to give rise to constitutional claim).  Accordingly, Davila has failed to state a claim of a violation

of his Eighth Amendment rights against the defendants.  The motion for summary judgment is granted on this ground.

Davila also challenges the strip search under the Fourth Amendment which, in the prison context, proscribes unreasonable searches.  *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979).  To determine whether a search is reasonable, the court considers "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  *Id.* at 559.

Courts have upheld strip searches as reasonable security measures, even when probable cause for the searches was absent, as long as the searches were related to a legitimate penological interest.  *See Florence*, 132 S. Ct. at 1523 (strip search procedure applied during intake process at prison facility to detainee arrested for minor offense was reasonably related to need of the prison facility to maintain security and did not violate Fourth or Fourteenth Amendments); *Bell*, 441 U.S. at 558–59 (holding visual strip searches of inmates' body cavities after contact visits with person from outside facility to be reasonable in light of the "serious security dangers" in prison, together with "common occurrence" of the "[s]muggling of money, drugs, weapons, and other contraband"); *Covino v. Patrissi*, 967 F.2d 73, 79 (2d Cir. 1992) (holding prison procedure of subjecting inmates and pre-trial detainees to routine and random visual body cavity searches reasonably related to legitimate penological interests).

On the other hand, a strip search or body cavity search that is unrelated to a legitimate penological purpose or is designed to intimidate, harass or punish the inmate violates the Fourth Amendment's proscription against unreasonable searches.  *See Hodges v. Stanley*, 712 F.2d 34, 35–36 (2d Cir. 1983) (second strip search performed soon after the first strip search served no

10

legitimate interest when prisoner was under continuous escort); *Hurley v. Ward*, 584 F.2d 609 (2d Cir. 1978) (affirming issuance of preliminary injunction that prohibited visual anal and genital searches of plaintiff without probable cause because "the gross violation of personal privacy involved in the . . . searches . . . especially in view of the physical and verbal abuse incident to the procedure far outweighed the evidence . . . at the preliminary hearing to justify the searches as a prison security measure."); *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (second strip search served no legitimate correctional interest because plaintiff had been under constant supervision since first strip search and verbal and physical abuse of plaintiff during search suggested purpose of search was to harass and intimidate).

State of Connecticut Administrative Directive 6.7, entitled Searches Conducted in Correctional Facilities, defines a strip search as a "visual body cavity search which includes a systematic visual inspection of an unclothed person's hair, body cavities (to include the . . . ears, nose, mouth, under arms, soles of the feet . . . between the toes, and rectum) and genitalia." Conn. Administrative Directive 6.7(3)(Q) (Aug. 15, 2014), http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0607.pdf (last visited Aug. 15, 2014).  Section 6.7(7) provides that a strip search should be conducted out of view of those not involved in the search process and should not normally require physical contact by prison staff.

Davila contends in his complaint and declarations that, in violation of the directives, defendant Messier touched his buttocks during the search and forced Davila to insert his fingers into his rectum several times.  He also contends that he has never abused the smudging rules in the past and argues that the defendants lacked a legitimate penological basis for an intrusive search.  If Davila is believed, he could prevail on his Fourth Amendment claim.  Defendant

Messier avers that he did not touch Davila.  Messier has provided his own affidavit as well as the incident report.  Neither party has presented incontrovertible proof.  Because the parties' credibility must be determined by the trier of fact, the defendants' motion for summary judgment is denied on the Fourth Amendment claim regarding the strip search.

      C.      <u>Denial of Access to the Courts</u>

Davila asserts claims for denial of his right of access to the courts based on interference with his legal mail and denial of access to legal materials.

To state a claim that he was denied his constitutionally-protected right of access to the courts, Davila must demonstrate that the defendants acted deliberately and maliciously and that he suffered an actual injury.  *Lewis v. Casey*, 518 U.S. 343, 353 (1996); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).  To establish an actual injury, Davila must allege facts showing that the defendants took or were responsible for actions that hindered his efforts to pursue a legal claim, prejudiced one of his existing actions, or otherwise actually interfered with his access to the courts.  *Lewis*, 518 U.S. at 351–53; *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 2002).  For example, he could demonstrate an actual injury by providing evidence "that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of the deficiencies in the prison's legal assistance facilities, he could not have known."  *Lewis*, 518 U.S. at 351.

Davila contends that as a result of his inability to access his boxes of legal materials, his state court case, *Davila v. Farinella*, No. TTD CV-11-5005507 S, and appeal were dismissed.  Compl. 17.  He alleges that he attempted to access the legal boxes in December 2011.  *Id. at* 15.  The decision dismissing the case is available on the Connecticut Judicial Branch Website.

12

Although the Superior Court denied Davila's motion for continuance to prepare for the hearing, it did so because Davila waited until the conclusion of the defendants' case to request the continuance rather that filing a motion before the date of the hearing or requesting a continuance immediately at the start of the hearing.  Mem. of Decision (Conn. Super. June 7, 2012) http://civilinquiry.jud.ct.gov/DocumentInquiry/Documentinquiry.aspx?DocumentNo=4912058 (last visited Aug. 15, 2014).  The appeal was dismissed because Davila failed to submit the court reporter's acknowledgment.  Notice of Dismissal, No. AC 34877 (Conn. App. Sept. 20, 2012) http://civilinquiry.jud.ct.gov/DocumentInquiry/Documentinquiry.aspx?DocumentNo=5310466 (last visited Aug. 15, 2014).   The hearing was held in May 2012.  Davila alleges that he has been denied access to his legal boxes since 2011.  The court cannot discern how the lack of the legal boxes caused either dismissal.  Certainly, the lack of the legal boxes did not prevent Davila from seeking a continuance prior to or at the beginning of the hearing.  In addition, he would have received documentation from the court reporter long after he was denied access to the legal boxes, so the required documentation would not have been in the boxes.

Davila also argues that the material in the boxes would assist him in prosecuting his federal habeas action, *Davila v. Murphy*, No. 3:09-cv-1666 (DJS) (D. Conn.).  Court records reveal that Davila filed an amended petition on October 3, 2012.  No additional filings were required; the petitioner in a federal habeas action is not required to file anything more than the petition.  The court cannot discern how the lack of legal materials hampered Davila's prosecution of this case.  Because Davila has not demonstrated an actual injury, the defendants' motion for summary judgment is granted with respect to all claims regarding denial of access to the legal boxes.

Davila also contends that the defendants improperly opened outgoing legal mail and removed documents from the envelope.  He submitted complaints to the mail supervisor and defendants Erfe and Mudano about that incident on June 20, 2012.

The confiscation of an inmate's legal documents related to a non-frivolous lawsuit can support a First Amendment claim for denial of, or interference with, access to the courts provided the inmate can show that he suffered an actual injury as a result of the confiscation.  *See Robinson v. Brown*, No. 9:11-cv-0758 (TJM/DEP), 2012 WL 6799725, at *5 (N.D.N.Y. Nov. 1, 2012).  Davila alleges that the missing documents would help his pending state case, *Davila v. Conn. Dep't of Correction*, No. HHB-CV12-5015664 S.  Compl. 18.  The court cannot discern how mailing documents to the CHRO, when his case already was pending in Superior Court would assist in the prosecution of the case.  The state case still is pending. http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=HHBCV125015664S (last visited Aug. 15, 2014).  Davila has not demonstrated that he suffered an actual injury as a result of the missing documents.  The defendants' motion for summary judgment is granted with respect to any claim for denial of access to the courts based on the missing documents.

D.    Retaliation

Davila contends that the confiscation of his boxes of legal materials as well as the opening of his outgoing legal mail and confiscation of documents from the envelope was retaliatory.  Compl. 40.  Prison officials may not retaliate against inmates for exercising their constitutional rights.  To state a retaliation claim, Davila must allege facts showing that his actions were protected by the Constitution or federal law and that his protected conduct was a "substantial or motivating factor" in the alleged retaliatory conduct.  *Friedl v. N.Y.C.*, 210 F.3d

79, 85 (2d Cir. 2000).  Because claims of retaliation are easily asserted, the courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient.  *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 2003).  To support a claim of retaliation, the allegedly retaliatory conduct must "deter a similarly situated inmate of ordinary firmness from exercising . . . [his] constitutional rights."  *Espinal v. Goord*, 558 F.3d 119, 128 n.7 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004)).  Any lesser conduct is *de minimis* and does not support a retaliation claim.  Prisoners are required to set forth more serious conduct than public employees or private citizens in order to state a retaliation claim.  Temporal proximity can support a causal connection.  *Id.* at 129.

Davila alleges two retaliatory acts: confiscation of his legal documents in 2011 and the opening of an outgoing legal envelope sometime prior to June 20, 2012.  He states that he "believe[s]" that the defendants acted as a result of several pending cases, *Davila v. Bruno*, No. 3:08-cv-278 (SRU/WIG), and *Davila v. Connecticut Department of Correction*, CHRO No. 1240105.  He also alleges that the actions occurred "right after some of the defendants were served on July 12, 2012, dealing with the same legal transactions above . . . at New Britain Superior Court Civ. No. 12-501-5664."  Compl. 35.  Davila has submitted a return of service indicating that service was made on defendants Arnone, Dzurenda, Erfe and Pluszynski on July 12, 2012.  *See* doc. #1-2 at 23.

Davila's evidence shows that service in the new lawsuit was effected on July 12, 2012, after both allegedly retaliatory actions had occurred.  Thus, the actions could not have been taken in retaliation for filing the new lawsuit.  The cited federal lawsuit had been pending for four years.  Davila does not indicate when he filed the CHRO complaint.  Because Davila has

15

presented no evidence to support his assertions, the defendants' motion for summary judgment is granted with respect to the retaliation claims.

      E.    <u>Other Federal Claims</u>

          1.    *Procedural Due Process*

Davila's procedural due process claim concerns the administrative remedies afforded by the Department of Correction. Davila considers the remedies inadequate because investigations he deemed necessary were not conducted and he did not receive his desired outcome. Davila does not have a procedural due process interest in having his claim investigated in a manner he deems appropriate or in any particular outcome of the grievance process. *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) (inmate has no constitutional due process right to have grievance investigated to his satisfaction); *Mandingo v. LeBlanc*, No. 3:12-cv-170 (JJB/RLB), 2013 WL 3490671, at *4 (M.D. La. July 9, 2013) (inmate plaintiff is not constitutionally entitled to an investigation into his administrative complaints or to a fair or favorable response thereto, and there is no procedural due process right inherent in such a claim); *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (inmate "does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction"; claim "arising from the alleged failure to investigate his grievance is indisputably meritless"). Davila's procedural due process claims are dismissed pursuant to 28 U.S.C. § 1914A(b)(1).

          2.    *Equal Protection*

Davila asserts a violation of his right to equal protection of the laws. The Equal Protection Clause protects prisoners from invidious discrimination. It does not mandate identical treatment for each individual; rather, it requires that similarly-situated persons be treated the

same.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40 (1985).  To state an equal

protection claim, Davila must allege facts showing that he was treated differently from other

similarly-situated individuals and the reason for the different treatment was based on

"impermissible considerations such as race, religion, intent to inhibit or punish the exercise of

constitutional rights, or malicious or bad faith intent to injure a person."  *Diesel v. Town of

Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (internal quotation marks and citation omitted).

Davila has not alleged facts showing that he was treated differently from similarly-situated

inmates or that his treatment was based on impermissible considerations.

Davila also can assert an equal protection claim on a "class of one" theory.  To state a

valid equal protection "class of one" claim, Davila must allege, first, that he has been

intentionally treated differently from others similarly situated and, second, that there is no

rational basis for the difference in treatment.  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564

(2000).  Davila must allege an "extremely high" level of similarity with the person to whom he is

comparing himself.  *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled in part on

other grounds by Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 605 (2008).  Davila's

circumstances and the other person's must be "prima facie identical."  *Id.* at 105.  Davila has

identified no other inmate who was treated differently under similar circumstances.  Thus, he

fails to state an equal protection class of one claim.  *See Page v. Lantz*, No. 3:03-cv-1271

(MRK), 2007 WL 1834519, at *6 (D. Conn. June 25, 2007) (holding that class of one equal

protection claim fails as a matter of law where plaintiff did not allege that similarly-situated

inmates were treated differently under similar circumstances).  Accordingly, Davila's equal

protection claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

3.      *Ninth Amendment*

Davila references the Ninth Amendment, which provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. The Ninth Amendment is a rule of construction; it is not an independent source of constitutional rights. *Griswold v. Conn.*, 381 U.S. 479, 492 (1965); *Jenkins v. Comm'r of I.R.S.*, 483 F.3d 90, 92–93 (2d Cir. 2007). Because the Ninth Amendment affords Davila no substantive constitutional rights, his Ninth Amendment claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1). *See Trujillo v. City of Newton*, No. 12-cv-2380 (JAR), 2013 WL 3337842, at *6 (D. Kan. July 2, 2013) (dismissing attempt to assert Ninth Amendment claim based on defendant's participation in strip search because Ninth Amendment is rule of construction and "cannot form the basis of a civil rights claim under § 1983").

4.      *Supremacy Clause*

The Supremacy Clause invalidates state laws that "interfere with, or are contrary to" federal law. *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211 (1824). State law may be preempted by an express provision enacted by Congress. Intent to preempt may be inferred from a sufficiently comprehensive regulatory scheme enacted by Congress or in an area of the law where federal law is dominant to an extent that precludes state legislation. *See W. Air Lines, Inc. v. Port Auth. of N.Y. & N.J.*, 658 F. Supp. 952, 955 n.10 (S.D.N.Y. 1986). Davila has not identified any state statute or regulation that is preempted by federal law. Accordingly, his Supremacy Clause claim fails and is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

F.    Qualified Immunity

1.  *Federal Claims*

The defendants argue they are protected by qualified immunity with regard to all claims for damages.  A state official sued in his individual capacity is protected by qualified immunity from a suit for damages unless the plaintiff can show that the state official violated a statutory or constitutional right and that the right was "clearly established" at the time of the alleged violation.  *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Id.* at 2083 (citation omitted).

The only remaining claims brought against the defendants in their individual capacities are the Fourth Amendment claim for an intrusive search and Davila's state torts claims.  The court has identified a genuine issue of material fact with regard to the Fourth Amendment claim alleging an unreasonable strip search.  Until the factual dispute about what Messier actually did is resolved by the trier of fact, the court cannot determine whether a reasonable correctional officer would understand that defendant Messier's actions were constitutional.  The defendants' request for summary judgment based on a theory of qualified immunity is denied with respect to Davila's Fourth Amendment claim.

2.  *State Claims*

With respect to Davila's state torts claims against the defendants in their individual capacities, Connecticut law provides, "[n]o state officer or employee shall be personally liable

for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Conn. Gen. Stat. § 4-165. Like a state police officer, a corrections officer's execution of a search falls within the scope of his employment. *Cf. Martin v. Brady*, 261 Conn. 372, 379 (2002). Connecticut courts note that "wanton, reckless, or malicious" acts go beyond gross negligence, and denote "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Martin*, 261 Conn. at 378–79. Claims based on a theory of negligence liability are thus barred by statutory immunity. Accordingly, Davila's claim for negligent infliction of emotional distress is dismissed against all defendants sued in their individual capacities.

The State has not addressed Davila's intentional torts claims that Messier committed battery and intentionally inflicted emotional distress ("IIED") by conducting an unlawful strip search. Those intentional torts are not statutorily barred, *id.* Thus, Davila's battery and IIED claims against Messier survive. The defendants' motion for summary judgment is denied with respect to the claim that their alleged intentional torts are protected by immunity.


IV.     **Conclusion**

The defendants' motion for summary judgment (doc. 36) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted with respect to the federal claims for denial of access to the courts, retaliation, and use of excessive force in violation of the Eighth Amendment. In addition, Davila's federal claims regarding procedural due process, equal protection, the Ninth Amendment, and the Supremacy Clause are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

20

Davila's federal and state claims seeking monetary damages are **DISMISSED** only with respect to that form of relief; his federal claim seeking injunctive and declaratory relief under the Fourth Amendment survives.  All negligence claims seeking money damages are **DISMISSED** pursuant to Connecticut General Statutes § 4-165.

Davila's claims seeking declaratory and injunctive relief under Section 1983 for the execution of an illegal strip search will proceed.  Davila's federal and state claims seeking money damages against defendant Messier in his individual capacity will also proceed.


It is so ordered.

Dated this 17th day of September 2014, at Bridgeport, Connecticut.


 /s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

21